**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>**JUANITA ORTIZ GARCIA**<br><br><br>**Debtor(s)** | **CASE NO. 14-04028 BKT**<br>**Chapter 13**<br><br><br>**FILED & ENTERED ON 06/25/2015** |

**OPINION AND ORDER**

Before the court is Juanita Ortiz Garcia's ("Debtor") Motion Submitting an Amended Chapter 13 Plan filed on March 30, 2015 [Dkt. No. 55], along with an Objection to Confirmation of Debtor's Amended Plan filed by Banco Popular de Puerto Rico ("BPPR") on April 08, 2015 [Dkt. No. 60]. For the reasons set forth below, the objection is denied.

### I. Factual Background

On July 29, 1987, Debtor granted H.F. Inc., a note in the original principal amount of $30,800.00, with 9.500% annual interest rate, due on August 1, 2017. The note was secured by a mortgage deed that was recorded at the Registry of the Property of Puerto Rico, Bayamón Section II. The note was subsequently endorsed and it is undisputed that the current holder of the same is BPPR.

On March 30, 2015, the Debtor filed an amended Chapter 13 payment plan proposing the following treatment to BPPR:

"BPPR'S Secure Claim of $9,318.19 will be paid by Debtor directly to secured creditor Banco Popular de Puerto Rico ("BPPR") on the following terms: (a) Claim will be paid directly by Debtor to BPPR, on or before month #60 of this

Chapter 13 Plan; (b) the underlaying promisory note will be capitalized to a principal balance of $9,318.19; (c) the Principal Balance is payable at an In re Till interest rate of 5.00%; (d) payment are amortized over 52 months; (e) the first payment is scheduled for March 1, 2015; (f) based on the above referenced terms, the payment is calculated to be $196.31."

BPPR objected to Debtor's amended chapter 13 plan arguing that pursuant to In re Ibarra, 235 B.R. 204 (Bkrtcy.D.P.R.1999), creditor is entitled to receive post-petition interest over the principal amount owed at the contract rate of 9.500%, instead of the proposed rate of 5%. While Debtor relied on Till v. SCS Credit Corp., 541 U.S. 465, (2004) and set the applicable interest rate at 5%.

## II.    Legal Analysis

11 U.S.C. § 1322(b)(2) provides that a chapter 13 plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, subject to the exceptions in sections 1322(c) and 1322(e).

Section 1322(b)(2) prohibits modification of claims secured by a debtor's principal residence. However, section 1322(c)(2) creates an exception to modification if such claim becomes due before the date on which the final payment under the plan is due. It is undeniable that BPPR's claim comes due before the final payment proposed in the amended plan and is therefore covered by the section 1322(c)(2) exception to modification. This section in turn incorporates the provisions of section 1325(a)(5) to provide for payment of the claim "as modified." Ibarra, 235 B.R. at 209–11.

In this case, the Debtor proposes to modify the interest rate to 5% in the amended plan by applying the "prime plus" formula expressed by four Justices of the Supreme Court writing for the divided plurality in the case of Till. In Till, the Supreme Court addressed the appropriate method for determining the interest rate on the secured portion of a claim that was bifurcated

under section 506. The debtor's chapter 13 plan proposed a 9.5% interest rate on the secured portion of the claim, calculated using a "formula rate." Similar to this case, in Till, the creditor argued that the 21% contract rate should apply.

A plurality of the court decided that the formula approach is the appropriate method for calculating interest on the secured portion of a loan. The Till Court defined the formula approach as the national prime rate plus an additional risk adjustment rate, which accounts for the debtor's risk of nonpayment. The national prime rate "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower." Id. at 479. The risk adjustment rate reflects the fact that debtors in bankruptcy typically pose a greater risk of defaulting than commercial debtors. Id. The court concluded that section 1325(a)(5)(B) only requires that the distributions under the claim equal the present value of the secured claim. Id. at 474. The Till court did not define how to compute the risk adjustment, but provided some guidance in noting that section 1325 "obligates the court to select a rate high enough to compensate the creditor for its risk but not so high as to doom the plan." Id. at 480. The lower court in Till approved a risk adjustment of 1.5%, and other courts have generally approved adjustments of 1% to 3%. Id. at 481.

The Debtor's amended plan was filed on the March 30, 2015. The national prime rate at the time of filing the amended plan was 3.25%. Applying the "prime plus" formula established in Till, with an adjustment of 1.75%, this Court finds that the Debtor's modification of the 9.50% interest rate to 5.00% interest rate is reasonable.

**III.     Conclusion**

WHEREFORE, IT IS ORDERED that the Objection is denied. The rate set forth in the Debtor's amended plan meets the requirements set forth in the case of Till. The Clerk shall schedule a confirmation hearing.

In San Juan, Puerto Rico this 25th day of June, 2015.

Brian K. Tester
U.S. Bankruptcy Judge